UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| NORMAN L. YOUTSEY, Plaintiff | ) | |
| v. | ) | Civil Action No. 10-30100-KPN |
| AVIBANK MANUFACTURING, INC., Defendant | ) | |

MEMORANDUM AND ORDER WITH REGARD TO PLAINTIFF'S MOTION TO REMAND (Document No. 4)
September 2, 2010

NEIMAN, U.S.M.J.

Presently before the court is a state-law complaint originally filed by Norman Youtsey ("Plaintiff") in state court against Avibank Manufacturing Co. ("Defendant"). Defendant removed the action to this forum as a diversity case under 28 U.S.C. § 1332(a). *See* 28 U.S.C. § 1446. Thereafter, the parties consented to the jurisdiction of this court pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

Plaintiff now claims via a motion to remand that Defendant's removal was in error since less than the jurisdictional threshold of $75,000 is at issue. Plaintiff's motion, while seemingly straightforward, raises novel questions of law, namely, (1) the proper burden upon Defendant to demonstrate the "amount in controversy" in a removal case; (2) how that burden plays out here; and (3) whether Plaintiff is entitled to attorney's fees and costs. For the reasons that follow, the court will place a "reasonable probability" burden on Defendant and, ultimately, allow Plaintiff's motion to remand. The court, however, will deny Plaintiff's accompanying request for attorney's

fees and costs.

## I. BACKGROUND

For present purposes, the following facts from Plaintiff's complaint are undisputed. On July 17, 2009, Defendant terminated Plaintiff's employment as a sales engineer. (Compl. ¶¶ 3, 5.) At the time, Plaintiff claims, he was owed approximately $20,000 in commissions. (*Id*. ¶ 4.) In October of 2009, Defendant paid Plaintiff $6,027.19 for some of the commissions but refused to pay him anything more. (*Id*. ¶¶ 6, 7.)

On March 26, 2010, Plaintiff filed the following four-count complaint against Defendant in the state district court: failure to pay wages in violation of Mass. Gen. L. ch. 149 (Count I); breach of the implied covenant of good faith and fair dealing (Count II); breach of contract (Count III); and unjust enrichment (Count IV). (*Id*. ¶¶ 9-29.) Attached to Plaintiff's complaint was a "Statement of Damages," filed pursuant to Mass. Gen. L. ch. 218, § 19A, in which he indicated that he was seeking "$20,000 . . . disregard[ing] [any] double or treble damage claims."[1]

The statute under which Plaintiff's wage claim (Count I) arises provides that a prevailing plaintiff is automatically entitled to "treble damages . . . and reasonable attorneys' fees." Mass. Gen. L. ch. 149, § 150. Referring in part to such treble damages, Defendant, on May 27, 2010, asserted that the amount in controversy was

[1] In pertinent part, Mass. Gen. L. ch. 218 mandates that a plaintiff file a statement of damages in the district court. *Id*., § 19A. The statute also indicates that the district court's original jurisdiction is generally limited to civil cases that do not exceed $25,000, notwithstanding the possibility of recovering multiple damages. *Id.*, § 19.

actually more than $75,000, noted that the parties were diverse (Plaintiff is from Massachusetts while Defendant is a Delaware corporation with a principal place of business in California), and removed the action to this forum pursuant to 28 U.S.C. §§ 1332(a), 1446. On July 12, 2010, Plaintiff filed the instant motion to remand, with an accompanying request for attorney's fees and costs. *See* 28 U.S.C. § 1447(c).

## II. Discussion

As noted, there are three questions for the court: (1) determining the proper burden on Defendant in this removal-based "amount in controversy" case; (2) applying the burden here; and (3) resolving whether Plaintiff is entitled to attorney's fees and costs. Addressing these questions *seriatim*, the court will find that Defendant's burden is one of "reasonable probability," that Defendant has not carried that burden, but that Plaintiff is not entitled to attorneys' fees and costs.

### A. The Removing Defendant's Burden Regarding the Amount in Controversy

In his motion, Plaintiff argues that the burden on Defendant regarding the amount in controversy is high. In essence, Plaintiff asserts that Defendant "must prove [either] with 'legal certainty' or by a 'preponderance of the evidence' that the plaintiff's claims exceed the $75,000 jurisdictional threshold to invoke federal subject matter jurisdiction." (Pl.'s Mem. Law in Supp. Motion to Remand and for Atty's Fees (Document No. 5, hereinafter "Pl.'s Brief") at 4 (citing *Radlo v. Rhone-Poulenc, S.A.*, 241 F. Supp. 2d 61, 63-64 (D. Mass. 2002).) Defendant, in contrast, argues that its burden is simply "to show that it is not a legal certainty that the claim involves less than the jurisdictional amount." (Def.'s Mem. Law in Supp. Opp'n Motion to Remand

(Document No. 7, hereinafter "Def.'s Brief") at 3 (citing, *inter alia*, *Spielman v. Genzyme Corp.*, 251 F.3d 1, 5 (1st Cir. 2001).) The court, for its part, disagrees with both parties. Although the court finds Plaintiff's arguments for a "preponderance of the evidence" standard more persuasive, the court has concluded that a removing defendant in a case such as this must demonstrate that there is a "reasonable probability" that the amount in controversy exceeds $75,000.

The court begins with five well-established principles. First, it is long-settled that "[t]he party invoking federal jurisdiction has the burden of establishing that the court has subject matter jurisdiction over the case." *Amoche v. Guar. Trust Life Ins. Co.*, 556 F.3d 41, 48 (1st Cir. 2009) (citing cases). Thus, in a removal action such as this, the *defendant* has "the burden of showing the federal court's jurisdiction." *Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1, 4 (1st Cir. 1999). Second, the federal courts have a particular "responsibility to police the border of federal jurisdiction," because "the Constitution limits the jurisdiction of federal courts, *see* U.S. Const. Art. III, and Congress has further narrowed our jurisdiction by periodically increasing the amount-in-controversy minimum for diversity cases." *Spielman*, 251 F.3d at 4 (citing *Pratt Cent. Park Ltd. P'ship v. Dames & Moore, Inc.*, 60 F.3d 350, 352 (7th Cir. 1995)). Third, a plaintiff is deemed to be the "master of his complaint." *Danca*, 185 F.3d at 4. Fourth, as the First Circuit has repeatedly stated, the "removal statute should be strictly construed against removal." *Rossello-Gonzalez v. Calderon-Serra*, 398 F.3d 1, 11 (1st Cir. 2004) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941)). *Accord Danca*, 185 F.3d at 4. And fifth, it is well-established that "determining whether

a case belongs in federal court should be done quickly, without an extensive fact-finding inquiry." *Spielman*, 251 F.3d at 4. *Accord Amoche*, 556 F.3d at 50. *See also Coventry Sewage Assocs. v. Dworkin Realty Co.*, 71 F.3d 1, 4 (1st Cir. 1995) ("[P]reliminary jurisdictional determinations should neither unduly delay, nor unfairly deprive a party from, determination of the controversy on the merits.").

These basic principles have been variously applied within this circuit. It appears, however, that neither the First Circuit nor, for that matter, the Supreme Court has ever addressed the precise issue here, *i.e.*, the proper burden a removing defendant bears in demonstrating the amount in controversy in a diversity case. *See Raymond v. Lane Constr. Corp.*, 527 F. Supp. 2d 156, 158 n.2 (D. Me. 2007) ("There is uncertainty regarding what standard the defendant bears in demonstrating the amount in controversy."); *Tremblay v. Philip Morris, Inc.*, 231 F. Supp. 2d 411, 414 n.2 (D.N.H. 2002) ("The First Circuit has not described the standard of proof that a court should use to determine whether a defendant removing a case based on diversity jurisdiction has met the amount in controversy requirement."). Nonetheless, there are some significant clues.

For one thing, the Supreme Court has said the following about an archetypical diversity case, where the *plaintiff* files initially in federal court:

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.

*St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938) (footnotes omitted). In turn, the First Circuit has often framed the basic burden this way: "Once the damages allegation is challenged, . . . 'the party seeking to invoke jurisdiction has the burden of alleging with sufficient particularity facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount.'" *Spielman*, 251 F.3d at 5 (quoting *Department of Recreation & Sports v. World Boxing Ass'n*, 942 F.2d 84, 88 (1st Cir. 1991), and citing *Barrett v. Lombardi*, 239 F.3d 23, 30-31 (1st Cir. 2001)). In other words, the archetypical plaintiff, who first files in federal court and thereafter faces a motion to dismiss, bears a fairly modest burden as "the party seeking to invoke jurisdiction." Moreover, he "may meet this burden by amending the pleadings or by submitting affidavits." *Id.* (citing *Department of Recreation & Sports*, 942 F.2d at 88).

Unfortunately, lower courts, in the archetypical scenario, have sometimes tried, imprecisely, to simplify the double-negative standard used by the First Circuit -- requiring the plaintiff to allege facts which indicate "that it is not a legal certainty that the claim involves less than the jurisdictional amount" -- and/or have wrongly switched the burden to the *defendant*. *See, e.g.*, *Radlo*, 241 F. Supp. 2d at 63 (wrongly stating that, "[i]n the more common case, when the defendant has moved to dismiss the plaintiff's original federal complaint because claims do not meet the amount-in-controversy requirement, the defendant has the burden of showing that there is 'legal certainty' that the plaintiff will not recover damages above the jurisdictional threshold"); *Rosario Ortega v. Star-Kist Foods, Inc.*, 213 F. Supp. 2d 84 (D.P.R. 2002) (incorrectly

holding that "once the defendant challenges the amount of damages alleged in the complaint, then the burden shifts to the plaintiffs to establish facts indicating that, to a legal certainty, the claims involve more than the jurisdictional minimum"), *id.*, 370 F.3d 124, 128 n.1 (1st Cir. 2004) (error noted by First Circuit). These shortcuts, however, overlook what the First Circuit has since clarified, *i.e.*, "[t]he double negative has substantive meaning" such that, in the typical case, "the plaintiff need only show it is *not* a legal certainty that the claims will *not* result in a verdict for the amount in controversy." *Id.*, 370 F.3d at 128 n.1 (emphasis in original), *rev'd on other grounds, Exxon Mobile Corp. v. Allapattah Servs*., 545 U.S. 546 (2005).

The problem has been somewhat compounded when addressing the burden in a removal case. Some courts in this circuit have looked to other jurisdictions and suggested that a removing defendant's burden should be to establish the amount in controversy either by a "preponderance of the evidence," *see, e.g.*, *Doughty v. Hyster New Eng., Inc.*, 344 F. Supp. 2d 217, 219 (D. Me. 2004); *Tremblay*, 231 F. Supp. 2d at 414 n.2 (citing *Martin v. Franklin Cap Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001), or, more strictly, "to a legal certainty," *see, e.g.*, *Raymond*, 527 F. Supp. 2d at 158 n.2 (citing *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 400-01 (9th Cir. 1996)). *See also Radlo*, 241 F. Supp. 2d at 63-64 (considering a "legal certainty" standard, but observing that "other circuits have required a removing defendant only to show by a preponderance of the evidence that the plaintiff's damage claims satisfy the amount-in-controversy requirement") (citing, *inter alia*, *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000)). Although Plaintiff suggests that either standard would be

appropriate here (Pl.'s Brief at 4), commentators and courts outside this jurisdiction, with reason, have often noted the confusion engendered by these varying standards. *See, e.g.*, *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1409-10 (5th Cir. 1995); *Spann v. Style Crest Prods., Inc.*, 171 F. Supp. 2d 605, 607 (D.S.C. 2001) (collecting cases). *See generally* Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 14A *Federal Practice & Procedure* § 3702 (2010 Westlaw ed.). As a solution, some courts have proffered "reasonable probability" as the appropriate benchmark. *See*, *e.g.*, *Spann*, 171 F. Supp. 2d at 607-08; *Reason v. Gen. Motors Corp.*, 896 F. Supp. 829, 834 (S.D. Ind. 1995).

For its part, Defendant proposes none of these standards. Rather, Defendant maintains that the "double negative" test applied to archetypical plaintiffs in the dismissal context -- what has sometimes been called an "inverse legal certainty" standard, *Spann*, 171 F. Supp. 2d at 607 -- should apply to defendants in the removal context. (Def.'s Brief at 3.) Accordingly, Defendant argues that it should be required to show simply "that it is not a legal certainty that the claim involves less than the jurisdictional amount." (*Id*.) As support, Defendant points to *Spielman*, where the First Circuit mentioned that such a standard applies, perhaps generically, to "the party seeking to invoke jurisdiction." (*Id.* (citing Spielman, 251 F.3d at 5).) Defendant goes so far as to claim -- incorrectly -- that there are only "two legal certainty tests," the *legal certainty* test and the *inverse legal certainty* test, and that "First Circuit precedent *establishes* the latter is the proper test to determine the amount in controversy." (*Id*. at 3 n.2 (emphasis added). See also *id*. at 2 ("Plaintiff is incorrect . . . that the First Circuit

has not set forth the standard for determining whether [Defendant] has satisfied the jurisdictional amount.").)

Defendant further confuses the issue by stating -- again incorrectly -- that judges in this district "have consistently and properly applied the [inverse legal certainty] standard to determine whether the amount in controversy requirement for diversity jurisdiction has been met for purposes of removal." (*Id*. at 3.) District Judge Douglas P. Woodlock did nothing of the sort in *Harvard Real Estate-Allston, Inc. v. KMart Corp.*, 407 F. Supp. 2d 317 (D. Mass. 2005). Nor did District Judge William G. Young in *LaValley v. Quebecor World Book Services LLC*, 315 F. Supp. 2d 136 (D. Mass. 2004), where he simply made reference to the procedural background of the case in a much longer summary judgment opinion. *See id*. at 141 (observing that "[t]he Notice of Removal alleges that the amount in controversy exceeds $75,000 . . . and it does not appear to a legal certainty that the claim is really for less than $75,000") (citation, internal quotation marks, and alteration omitted).

Defendant's argument to the contrary, therefore, the court does not believe that the First Circuit would impose -- or has already imposed -- the "inverse legal certainty" standard in a removal case such as this. Rather, the court believes that the First Circuit -- given its recent decision in *Amoche*, 556 F.3d 41, which neither party cites -- would adopt a more stringent "reasonable probability" standard. *Amoche*, in fact, provides numerous guideposts as to how to resolve the case at bar.

In *Amoche*, the First Circuit confronted a class action filed in state court which the defendant then sought to remove to federal court under the Class Action Fairness

Act of 2005 ("CAFA"), Pub.L. No. 109-2, 119 Stat. 4 (codified in scattered sections of title 28). *Id.*, 556 F.3d at 42-43.[2] The threshold issue before the court, like here, was "the burden on a removing defendant to establish the amount in controversy." *Id.* at 43. The First Circuit held that, "at least where the complaint does not contain specific damage allegations, the removing defendant must show a *reasonable probability* that the amount in controversy exceeds" the jurisdictional minimum, there $5 million dollars. *Id.* (emphasis added). In the court's view, every reason the First Circuit used in *Amoche* in arriving at the "reasonable probability" standard in the context of CAFA applies equally as well here.

Before turning to those reasons, however, the court makes several threshold observations. Preliminarily, the court notes that, as in *Amoche*, this case involves removal of a complaint that does not contain a specific damages allegation. To be sure, Plaintiff's Statement of Damages claimed $20,000, but that amount, as indicated, included neither a potential multiplier, *see* Mass. Gen. L. ch. 149, § 150, nor Plaintiff's undefined attorney's fees (see discussion, *infra*); nor did it take into account a potential offset (of $6,027.19). *See id.*, 556 F.3d at 49 n.2 (noting the parties' similar concession that, despite a "specific amount in damages" alleged, the complaint is, ultimately "uncertain, ambiguous and indeterminate as to the [total] amount in controversy").

In addition, the court notes that the First Circuit, throughout its decision in *Amoche*, relied heavily on prior burden language from its non-CAFA decisions. *See*,

[2] CAFA "provides for removal to federal court of state class actions that satisfy the statute's minimal diversity and class size requirements and have more than $5 million in controversy." *Id.* (citing 28 U.S.C. §§ 1332(d), 1453).

*e.g.*, *id.* at 48-51 (variously relying on *Danca*, *Spielman*, *Department of Recreation & Sports*, and *Coventry Sewage Assocs*.). Other circuits too have borrowed liberally from their own pre-CAFA precedent in determining CAFA burdens. *See*, *e.g.*, *Cappuccitti v. DirecTV, Inc.*, 611 F.3d 1252, 1254-55 (11th Cir. 2010) (noting how CAFA "preserv[es] the traditional rule[s]" regarding removal burdens); *Palisades Collections LLC v. Shorts*, 552 F.3d 327, 334-35 (4th Cir. 2008) (describing how CAFA did not alter traditional removal rules); *Morgan v. Gay*, 471 F.3d 469, 472-73 (3rd Cir. 2006) (holding that under CAFA, the party seeking removal continues to bear the burden of establishing the requisite amount in controversy); *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006) ("[U]nder CAFA, the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction."); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005) (finding that "none [of CAFA's language] is even arguably relevant" to the question of burden shifting).[3]

These threshold matters aside, *Amoche* utilizes four guideposts which lead this court to conclude that the "reasonable probability" standard should apply here as well. First, *Amoche* makes a clear distinction between the removal scenario and the archetypical plaintiff-files-in-federal-court scenario. According to the First Circuit, "[t]he removing defendant's effort to liken its situation to cases in which the plaintiff has

[3] Indeed, if there is any distinction, it may be even *easier* to remove a CAFA case to federal court than a non-CAFA case. *See Amoche*, 556 F.3d at 47-48 (noting how CAFA "made a federal forum more accessible to removing defendants by imposing only a minimal diversity requirement, eliminating the statutory one-year time limit for removal, and providing for interlocutory appeal of a federal district court's remand order"); *Cappuccitti*, 611 F.3d at 1254 (similar).

chosen to be in federal court and it is the defendant who seeks to defeat federal jurisdiction does not work." *Id*. at 49. "[P]lacing a removing defendant in the same posture as a plaintiff who originally files in federal court," the First Circuit explains, "would conflict with the general rule of deference to the plaintiff's choice of forum." *Id.* at 49-50 (citing 14C Wright, Miller & Cooper, *Federal Practice & Procedure* § 3725, at 95 (3d ed. 1998) (in turn, recognizing that "a greater burden [is imposed] on defendants in the removal situation than is imposed on plaintiffs who wish to litigate in federal court by invoking its original jurisdiction" to determine the amount in controversy but that "[t]his discrepancy in treatment of plaintiffs and defendants may be justified by the historical tradition that the plaintiff is the master of the forum and is empowered to choose the court system and venue in which litigation will proceed")). Moreover, the First Circuit clarifies in *Amoche* that its language in *Spielman* -- which noted that the burden was generally on "the party seeking to invoke jurisdiction" -- applied *only* to "a plaintiff who initially files in federal court." *Id.* at 49 & n.3.

Second, *Amoche* indicates that "the reasonable probability standard is . . . for all practical purposes identical to the preponderance standard" which has been adopted by other jurisdictions. *Id.* at 50 (citations and footnote omitted). Even so, the First Circuit points out that, "because questions of removal are typically decided at the pleading stage where little or no evidence has yet been produced, the removing defendant's burden is better framed in terms of a reasonable probability, not a preponderance of the evidence." *Id.* (citation and internal quotation marks omitted). This court believes this is true for the non-CAFA situation as well. As the First Circuit

explains, "[t]he 'reasonable probability' language better captures the preliminary nature of this inquiry, reserving the preponderance of the evidence terminology for other conclusions." *Id.*

Third, *Amoche* cautions against "encourag[ing] or creat[ing] a step-by-step burden shifting system, which would result in extensive and time consuming litigation over the question of the amount in controversy." *Id.* (citing, *inter alia*, *Spielman*, 251 F.3d at 4). "With that caution in mind," the First Circuit continues, "deciding whether a defendant has shown a reasonable probability that the amount in controversy exceeds [the jurisdictional threshold] may well require analysis of what *both* parties have shown." *Id.* at 51 (emphasis in original). For example, a court might "consider which party has better access to the relevant information." *Id.* (citing *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 n.3 (11th Cir. 2006). Conversely, a court might simply ignore an off-hand remark that the other party's showing is "speculative." *See id.* ("Merely labeling the defendant's showing as 'speculative' without discrediting the facts upon which it rests is insufficient."). These suggestions apply with equal force to a non-CAFA removal case. *See Spielman*, 251 F.3d at 5; *Department of Recreation & Sports*, 942 F.2d at 88.

Fourth and finally, *Amoche* reiterates (and applies to the CAFA situation) two additional black-letter principles. For one thing, the First Circuit states, "the plaintiff['s] likelihood of success on the merits is largely irrelevant to the court's jurisdiction because the pertinent question is what is *in controversy* in the case, not how much the plaintiff[] [is] ultimately likely to recover." *Id.* (emphasis in original; citation omitted).

Relatedly, the First Circuit adds, “a court’s analysis of the amount in controversy focuses on whether a removing defendant has shown a reasonable probability that more than [the jurisdictional threshold] is in controversy at the time of removal.” *Id.* (emphasis in original). “Events subsequent to removal that reduce the amount in controversy below the jurisdictional minimum,” the First Circuit concludes, “do not divest a federal court of jurisdiction.” *Id.* (citing *Coventry Sewage Assocs*., 71 F.3d at 6).

All of these *Amoche* guideposts apply easily to the non-CAFA situation, *i.e.*, where a defendant removes a state case on the basis of diversity, 28 U.S.C. § 1332(a), and then defends against a remand motion focused on the amount in controversy. Thus, as in *Amoche*, “reasonable probability” is the appropriate standard that Defendant here must bear in this removed amount in controversy dispute. *See also JGCA Holding Corp. v. McCarthy*, 2010 WL 99089, at *1 n.1 (D.N.H. Jan. 6, 2010) (indicating that *Amoche*‘s “reasonable probability” burden is “identical” to a removing defendant’s burden in a section 1332 diversity case).

B. <u>Application of the “Reasonable Probability” Burden</u>

Applying the reasonable probability burden here is not particularly complicated. For the reasons that follow, the court will find that Defendant has not demonstrated a reasonable probability that the amount in controversy exceeds $75,000.

The court begins with Plaintiff’s acknowledged best-case scenario. If Plaintiff were to be “fully successful” on his claims, he will obtain $20,000, those damages will be trebled, *see* Mass. Gen. L. ch. 149, § 50, and his recovery will be offset by

$6,027.19. (Pl.'s Brief at 4-5.) Yet even under that rosy narrative, as Defendant tacitly acknowledges, Plaintiff's award of $53,972.81 ($60,000 minus $6,027.19) would be more than $21,000 shy of the $75,000 jurisdictional threshold.[4]

Nonetheless, the parties agree that Plaintiff's potential attorney's fees, which would be mandated by Mass. Gen. L. ch. 149, § 150, should be added to the calculation. *See Spielman*, 251 F.3d at 7 (holding that attorney's fees may be included in "the amount-in-controversy determination . . . when a statute mandates or allows payment of the fees"); *Raymond*, 527 F. Supp. 2d at 159-64 (indicating that future attorney's fees should be considered). Plaintiff, however, suggests that it is "entirely unrealistic and speculative for [Defendant] to assert that [he] will be awarded in excess of $21,000 in attorney's fees." (Pl.'s Brief at 5.)

Unfortunately for Plaintiff, the court cannot give much weight to his musings about potential fees. *See Spielman*, 251 F.3d at 5 (burden involves "alleging with sufficient particularity facts . . ."); *Department of Recreation & Sports*, 942 F.2d at 88 (same). Still, Defendant has offered nothing more than its *own* naked speculation that Plaintiff's fees could possibly be high enough to raise his recovery to over $75,000. (See Def.'s Brief at 4 (indicating that Plaintiff's attorney's fees "cannot be determined at this time, but . . . are likely to be substantial enough to result in a total recovery exceeding $75,000").) Given that the burden here is Defendant's, not Plaintiff's, such

[4] To be sure, the court can envision even a lesser sum, *i.e.*, where the offset would occur *prior* to trebling ($20,000 minus $6,027.19), thereby resulting in a trebled award of $41,918.43 ($13,972.81 multiplied by three). For present purposes, however, the court will accept Plaintiff's higher calculation.

speculation on its part is simply insufficient. *See Amoche*, 556 F.3d at 50. ("[A]s the proponent of federal jurisdiction, [the defendant] must *sufficiently demonstrate* that the amount in controversy exceeds [the] jurisdictional minimum.") (emphasis added). *Compare Raymond*, 527 F. Supp. 2d at 163-64 (holding that defendant bore its burden because "even one extra dollar of attorney's fees would place [the plaintiff] over the $75,000 threshold").

Accordingly -- and mindful that (1) this court has a particular "responsibility to police the border of federal jurisdiction," *Spielman*, 251 F.3d at 4, (2) Plaintiff is the "master of his complaint," *Danca*, 185 F.3d at 4, and (3) the "removal statute should be strictly construed against removal," *Rossello-Gonzalez*, 398 F.3d at 11 -- the court has little choice but to allow Plaintiff's motion. As a result, the matter will be remanded to state court.

C. <u>Attorney's Fees and Costs</u>

Plaintiff's request for attorney's fees and costs in pursuing his remand motion warrants a brief discussion. *See* 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney's fees, incurred as a result of the removal.") As the Supreme Court has noted, ordering the payment of fees is often the best way "to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (2005) (also noting that "[t]he process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources").

Still, as long as a defendant has an "objectively reasonable basis" for removal, fees are not warranted. *See id.* at 141.

This case, in the court's view, skirts the edge as to what is objectively reasonable. In particular, the court has been somewhat troubled by Defendant's mischaracterization of the state of the applicable law in this circuit. (See, *e.g.*, *supra* at 8-9.) Nonetheless, the court will not award Plaintiff's fees or costs. As noted, significant legal issues about the burdens upon removal have been unsettled and the facts are not so one-sided as to have made remand a foregone conclusion. Accordingly, Plaintiff's request for attorney's fees and costs will be denied.

## III. CONCLUSION

For the reasons stated, Plaintiff's motion to remand is ALLOWED, but his accompanying request for attorney's fees and costs is DENIED. This case shall be remanded forthwith.

DATED: September 2, 2010

/s/ Kenneth P. Neiman
KENNETH P. NEIMAN
U.S. Magistrate Judge